IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Market Day Corporation, | : | Case No. 1:05-cv-578 |
| | : | |
| Plaintiff, | : | District Judge Susan J. Dlott |
| v. | : | Magistrate Judge Timothy Black |
| | : | |
| Steven R. Maas, d/b/a Northern Prime Meats | : | ORDER GRANTING IN PART |
| Seafood & Steak Company, | : | PLAINTIFF'S MOTION FOR AWARD |
| | : | OF FEES AND COSTS AND |
| Defendants. | : | CLOSING CASE |
| | : | |

This matter comes before the Court on Plaintiff Market Day Corporation's ("Market Day's") Motion for Entry of Its Award of Fees and Costs (doc. #9).  For the reasons below, Market Day's Motion (doc. #9) is **GRANTED IN PART AND DENIED IN PART**; Defendant Steven R. Maas, d/b/a Northern Prime Meats Seafood & Steak Co. ("Maas") is **ORDERED** to pay Market Day **$12,758.51** in fees and costs; and this case is hereby **CLOSED.**

I.  BACKGROUND

Market Day filed this trademark infringement case against Maas in September 2005, alleging that Maas has "falsely identified himself as a Market Day representative" and also "falsely represented that he was selling genuine Market Day" products while conducting door to door sales of frozen meat.  (Doc. #1 at 1 ¶ 2, 4 ¶ 15.)  Market Day sought a declaratory judgment finding Maas in violation of the federal Lanham Act[1] as well as Ohio trademark, deceptive trade practices, unfair competition, and unfair dilution law; a permanent injunction barring Maas and any collaborators from using the Market Day or confusingly similar marks in connection with

---

[1] The Lanham Act is codified at 15 U.S.C. §§ 1051 *et seq*.

1

their sales activities; and an award of actual damages, attorney's fees, prejudgment interest, and punitive and exemplary damages.[2] (Doc. #1 at 7-8 ¶¶ A-B.) After Maas was served and failed to timely answer Market Day's complaint, Market Day obtained an entry of default and a default judgment. (See docs. ##s 5-8.) The Court's default judgment order, entered on November 9, 2005, declared judgment as to liability against Maas on each count of Market Day's complaint and imposed permanent injunctive relief barring Maas and associated parties from further infringement of Market Day's trademarks or related unlawful activity.[3] (Doc. #8 at 1-2 ¶¶ 1-3.) The default judgment order also stated that "Market Day may seek reimbursement of attorney's fees and costs by submitting a declaration regarding such fees and costs." (Id. at 2 ¶ 4.)

---

[2] Market Day also sought an "order compelling Maas to give an accounting of sales made and profits derived by Maas from his acts of trademark infringement, unfair competition, and other violations of federal and Ohio law, and awarding those profits to Market Day," and "other relief as this Court deems appropriate and just." (Doc. #1 at 8 ¶¶ C-D.)

[3] The relevant portion of the order reads:

1. Judgment as to liability is entered against the Defendant and in the Plaintiff's favor on each count of the Complaint;
2. By this Order, Defendant, his employees, agents, officers, directors, independent contractors, successors, affiliates, purchasers, assigns, servants, representatives, and attorneys and any entities, persons or companies acting in concert or participation with any of them are permanently enjoined from continued acts of trademark infringement, unfair competition, copyright infringement, and dilution by soliciting, selling, or offering for sale any products in connection with or through the use of the MARKET DAY trademark or any other of Plaintiff Market Day's trademarks, as with or through other marks that are confusingly similar to Market Day's trademarks, or that are otherwise misleading as to source, origin or sponsorship (together, the "Market Day Trademarks") [; and]
3. All packaging, articles, labels, signs, prints, cartons, catalogs, advertisements, equipment and other materials or items in Defendant's possession that use any of the Market Day trademarks shall be destroyed.

(Id. at 1-2 ¶¶ 1-3.)

On November 22, 2005, Market Day filed its pending motion for an award of fees and costs against Maas. (Doc. #9.) Maas has not responded to Market Day's fee motion, answered Market Day's complaint, filed any papers, or otherwise entered an appearance in this action.

## II.     ANALYSIS

Market Day asserts that it is entitled to an award of $21,955.94 in attorney's fees "on the basis of the findings" in this Court's default judgment order, as well as "the exceptional circumstances" of Maas' conduct in this case. (Doc. #9 at 1.) More specifically, Market Day maintains that the conduct described in its complaint "constitute[s] blatant, willful infringement of the MARKET DAY mark"; that both federal and Ohio law provide for fee awards in willful infringement cases; and that such an award is particularly justified here in light of Maas' unresponsiveness and apparent "lack of respect for the judicial process." (Id. at 5.) The Court concludes that while Market Day is entitled to some fees and costs in this case, a more reasonable award is $12,759.

### A.     Legal Authority for Fee Awards

As a threshold issue, the Court rejects Market Day's implication that it is entitled to a fee award by the express terms of the Court's order awarding it default judgment. The order's recognition that Market Day "may *seek*" reimbursement of its fees and costs in the wake of a favorable judgment, see doc. #8 at 2 ¶ 4 (emphasis added), does not relieve the Court of its obligation to ensure that there is independent legal authority for such reimbursement in the circumstances of this case. See, e.g., Eagles, Ltd. v. American Eagle Found., 356 F.3d 724, 725-26 (6th Cir. 2004) (affirming district court's decision, following entry of order dismissing case with prejudice and allowing defendants to move for fees and costs, to deny defendants' motion

for fees and costs.)  The Court finds, however, that there is ample authority to support an award of fees and costs here.

The Lanham Act entitles parties prevailing in "exceptional cases" to "reasonable" attorney's fee awards.[4]  See, e.g., Eagles, 356 F.3d at 726-27 (citing 15 U.S.C. § 1117(a).)  "Exceptional cases" are limited to those in which a defendant has engaged in "malicious, fraudulent, wilful, or deliberate" infringement.  See id. at 728.  Similarly, the Ohio Deceptive Trade Practices Act provides for fee awards in cases where a defendant is found to have "wilfully engaged" in what the defendant knew to be a "deceptive" trade practice.  O.R.C. § 4165.03(B).  Both statutes afford courts considerable discretion in fashioning fee awards.  Hindu Incense v. Meadows, 692 F.2d 1048, 1051-52 (6th Cir. 1982) (Lanham); Walker v. Cadillac Motor Car Div., 578 N.E.2d 524, 530-31 (Ohio App. 8th Dist. 1989) (Ohio Deceptive Trade Practices Act).

Market Day contends that Maas' engagement in what it alleges is "malicious, fraudulent, wilful or deliberate" infringement, combined with his failure to answer Market Day's complaint, render this the sort of "exceptional" case meriting a fee award.  (Doc. #9 at 3.)  Market Day further suggests that courts may properly award fees under the Lanham Act even where – as here – the Court has simply entered default judgment on a complaint *alleging* willful trademark infringement.  (Id. (citing in part Rio Properties v. Rio Int'l, Interlink, 284 F.3d 1007, 1022-23 (9th Cir. 2002)); see also doc. #1 (complaint) at 5 ¶ 23, 6 ¶ 27 (alleging willful trademark infringement) and 6 ¶ 29 (alleging willful engagement in deceptive trade practices).)

---

[4] The Lanham Act also allows prevailing plaintiffs to recover their costs "subject to the principles of equity."  15 U.S.C. § 1117(a)(3).

The actions described in Market Day's complaint, if true, would constitute willful trademark infringement in this Circuit. See, e.g., Johnson v. Jones, 149 F.3d 494, 503 (6th Cir. 1998) (internal citations omitted) (endorsing proposition that "passing off a product . . . as another seller's better established one, or some other deliberate theft of a marketholder's goodwill," constitutes "willful infringement" supporting a fee award.) The Court has not had the opportunity to *validate* Market Day's factual allegations against Maas, because its entry of default cut off the presentation of evidence in this case. The Court is persuaded, however, by the courts who have held that certain default judgments may fall within the class of "exceptional cases" justifying fee awards under the Lanham Act. Those courts have articulated two primary rationales, both of which apply here. The first is that an entry of default against a defendant establishes as true all factual allegations in the complaint, including any allegations of conduct constituting willful infringement for Lanham Act purposes. See, e.g., Rio Props., 284 F.3d 1023; American Appraisal Assoc. v. West, No. 3:05-0168, 2006 WL 724547, at *1 (M.D. Tenn. March 21, 2006.) The second is that a defendant's sustained failure to *respond* to allegations of trademark infringement is itself an "exceptional" circumstance justifying a fee award under the Lanham Act. See, e.g., Lien v. Compusoft of Kalamazoo, No. 1:89-cv-104, 1991 U.S. Dist. LEXIS 3218, at *13 (W.D. Mich. March 13, 1991) (emphasizing defendant's "total disregard" of the proceedings.)

The Court concludes that, in the circumstances of this case, Market Day is entitled to collect "reasonable" attorney's fees and costs[5] from Maas. The Court must now determine

---

[5] As noted above, requests for cost awards under the Lanham Act are evaluated under an equity test that is presumably less restrictive than the "exceptional cases" test for fee awards. See note 4, supra. In light of Maas' unresponsiveness, a cost award is equitable here.

whether Market Day's requested award is in fact reasonable.

### B. Reasonableness of Requested Fee and Cost Figures

Market Day moves the Court for a total award of $21,955.94[6] in attorney's fees and expenses. (Doc. #9 at 1.) According to the supporting affidavits filed with Market Day's motion, this amount represents $9,848.44 in fees and expenses incurred by the Dinsmore & Shohl law firm and $12,107.50 in fees and expenses incurred by the Schiff Hardin law firm. (See doc. #10-2 at 2 ¶ 5 and doc. #10-3 at 4 ¶ 12.) Market Day has documented all but $3,595.53 (or $18,360.41) of these fees and expenses in itemized billing records, also attached to its motion. (See generally docs. ##s 10-2 Ex. 2 and 10-3 Ex. A.) According to counsel's supporting affidavits, this undocumented $3,595.53 remainder consists of $3,151.00 in fees and $444.53 in expenses incurred by Dinsmore & Shohl during November 2005 but not billed to Market Day as of Market Day's filing of this fee motion on November 22, 2005. (See doc. #10-2 at 2 ¶ 5.)

To determine whether Market Day's requested fees and expenses are reasonable, the Court must consider both the total hours expended on this action by Market Day's counsel and associated staff and the billing rates applied to those hours.[7] See, e.g., Barnes v. City of Cincinnati, 401 F.3d 729, 745 (6th Cir. 2005) (internal citations omitted). The product of these

---

[6] $21,955.94 is the figure requested in Market Day's motion for fees and expenses. (See doc. #9 at 1.) Market Day's memorandum in support of that motion twice cites to a lower figure of $19,427.94. (See doc. #9-2 at 2, 6.) Market Day's papers do not explain this apparent discrepancy. Because only the $21,955.94 figure ties to the affidavits and billing record exhibits submitted in support of Market Day's motion, the Court disregards the $19,427.94 figure.

[7] Market Day has not requested that a multiplier be applied to its lodestar. Nor does a multiplier appear warranted here, for the same reasons the Court discusses in reducing the lodestar. See Part II.B, infra.

numbers, or lodestar, may then be adjusted upwards or downwards for considerations including:

> (1) the time and labor required; (2) the novelty and difficulty of questions presented; (3) the skill needed to perform legal service properly; (4) the preclusion of employment by attorney due to acceptance of case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) undesirability of case; (11) nature and length of professional relationship with client; and (12) awards in similar cases.

Id.

### 1. Hours Expended

The Court first examines the total hours expended on Market Day's litigation against Maas. Market Day bears the burden of documenting counsel's efforts and charges, and the Court may reduce its requested award where this documentation appears inadequate. Reed v. Rhodes, 179 F.3d 453, 472 (6th Cir. 1999) (citing Hensley v. Eckerhart, 461 U.S. 421, 432 (1983)). As noted above, Market Day has not provided any hourly or other billing records to support its request for the $3,595.53[8] in fees and expenses that Dinsmore & Shohl submits it incurred on this case during November 2005. (See, e.g., doc. #10-2 at 2 ¶ 5.) The Court cannot readily determine, by reference to simple lump figures, whether the requested fees and expenses reflect a reasonable expenditure of time and effort by counsel. See, e.g., Lien, 1991 U.S. Dist. LEXIS 3218, at *13-14. The Court therefore deducts $3,5953.53 from Market Day's total requested award of $21,944.54, and further considers only the $18,360.41 remainder for which Market Day has provided billing and expense records.

In evaluating the time counsel has expended on a case, the Court must "focus upon the

---

[8] This figure consists of $3,151.00 in fees and $444.53 in expenses. (Doc. #10-2 at 2 ¶ 5.)

7

significance of overall relief obtained" and exclude "excessive, redundant, or otherwise unnecessary hours." U.S. Structures, Inc. v. J. P. Structures, Inc., 130 F.3d 1185, 1193 (6th Cir. 1997) (citing Hensley, 451 U.S. at 433-34). The billing records submitted by Market Day indicate that counsel and support staff at Dinsmore & Shohl and Schiff Hardin spent a combined total of just under sixty hours (or 57.5 hours)[9] on Market Day's action against Maas. This investment does not appear excessive in light of the complete (if, admittedly, shallow) default judgment relief counsel has obtained for Market Day. The Court has also reviewed the individual billing entries and assured itself that none appear to reflect excessive, redundant, or otherwise unnecessary work.

### 2. Hourly Rate

The Court next examines counsel's requested hourly billing rates, the "key focal point in award determinations." Kelley v. Metro Cty. Bd. of Educ., 773 F.2d 677, 683 (6th Cir. 1985). Market Day's fee request was calculated using the following rates:

| | |
|---|---|
| Thomas P. White, Partner, Schiff Hardin | $420 |
| Lynda E. Roesch, Partner, Dinsmore & Shohl | $395 |
| Jeanette Zimmer, Senior Associate, Schiff Hardin | $310 |
| Kathryn K. Przywara, Of Counsel, Dinsmore & Shohl | $230 |
| Roseanne Humbert and Emily Brommel Hiltz, Paralegals, Dinsmore & Shohl | $125 |

(Doc. #10-2 at 2-3 ¶ 7; doc. #10-3 at 2 ¶ 3, 3 ¶ 9.)

Counsel for Dinsmore & Shohl and Schiff Hardin submit that these figures reflect their customary and/or prevailing market rates, in the Cincinnati and Chicago metropolitan areas, for the type of trademark litigation conducted in this case. (Doc. #10-2 at 2-3 ¶ 7; doc. #10-3 at 3 ¶

---

[9] This figure excludes any hours expended by Dinsmore & Shohl during November 2005, because – as noted above – Market Day has not itemized those hours.

10.) While an attorney's customary hourly rate often serves as a reference point in computing fee awards, it does not necessarily constitute a "reasonable" rate for purposes of every fee award. Rather, this Court has the discretion – and presumptive obligation – to determine what rates are "reasonable" in the circumstances of each case. Hudson v. Reno, 130 F.3d 1193, 1209 (6th Cir. 1997) (internal citations omitted).

While it appears that Market Day's counsel faced some practical challenges in attempting to locate and serve Maas, see, e.g., doc. #10-3 at 3 ¶ 11, Market Day's complaint does not present, on its face, any unusual or complex legal or factual issues. To the extent Market Day's case *would* have raised unusual or complex issues had it developed further, the entry of default cut short Market Day's obligation to grapple with those issues. While the Court has no reason to question Market Day's counsel's efficiency or competency in pursuing this matter, it does not believe that a full lodestar award at counsel's customary hourly rates is appropriate given these factors. See, e.g., Barnes, 401 F.3d at 745 (listing, as grounds for lodestar adjustment, the "time and labor required," "novelty and difficulty of questions presented," and "skill needed" in prosecuting a case).

The Court finds the following reduced hourly rates to be more reasonable:[10]

| | |
|---|---|
| Partner | $250 |
| Senior Associate and Of Counsel | $200 |
| Paralegal | $85 |

The Court has applied these reduced rates to the itemized hourly bills attached to Market

---

[10] In establishing its reduced rates, the Court does not differentiate between the services provided by Dinsmore & Shohl and those provided by Schiff Hardin. Counsel for Schiff Hardin – based outside Chicago, Illinois – have represented that they collect higher customary rates. It is reasonable, however, to use local market rates as a starting point for fee awards in locally litigated cases. See, e.g., Hudson, 130 F.3d at 1208.

Day's motion and arrived at a revised lodestar of $12,758.51.[11] This revised figure falls within the range of fee awards in other trademark infringement cases resolved on default judgment. Cf., e.g., Microsoft Corp. v. T&S Int'l. Corp., No. 03-c-4129, 2004 WL 407008, at *1 (N. D. Ill. March 3, 2004) ($38,925.50 in "complex[ ]" trademark case); American Appraisal, 2006 WL 724547, at *1 ($11,364.58); Lien, 1991 U.S. Dist. LEXIS 3218, at *14 ($4,786.39); see also Barnes, 401 F.3d at 745 (listing, among factors for Court's consideration in adjusting lodestar, "awards in similar cases.") It also seems more in keeping with the compact, relatively straightforward history of this litigation than Market Day's original $21,955.94 request.

### III. CONCLUSION

For the reasons above, the Court **GRANTS IN PART AND DENIES IN PART** Market Day Corporation's Motion for Fees (doc. #9) and **ORDERS** Steven R. Maas, d/b/a Northern Prime Meats Seafood & Steak Co. to pay Market Day **$12,758.51** in fees and costs.

This order disposes of the remaining claims in this case, which is hereby **CLOSED.**

IT IS SO ORDERED.

                                               s/Susan J. Dlott
                                               Susan J. Dlott
                                               United States District Judge

---

[11] This figure includes all costs documented in the billing records, with no adjustments.